UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| PATRICK WALLACE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:08CV134 CDP |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Patrick Wallace brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Following his guilty plea to three drug charges, I sentenced Wallace to 180 months' imprisonment. After the amendments to the crack cocaine sentencing guidelines, I reduced the sentence to 161 months.

Wallace's sentencing contained many errors, both legal and factual. The errors were made by the prosecution, by defense counsel, by the Probation Office, and by the sentencing judge – me. I will grant his motion to vacate, because counsel was ineffective for advising him that he was a career offender and for failing to point out the many mistakes made at sentencing, because the government breached the plea agreement, and because I misadvised Wallace about his appeal rights. Wallace will have the option of withdrawing his plea or seeking specific performance of the plea agreement and resentencing before a different judge. I will appoint counsel to represent him in this process.

## Grounds Raised

Wallace's initial[1] motion to vacate raised the following claims for relief: (1) he was denied effective assistance of counsel because counsel failed to object to the enhancements for Wallace's role as a leader and for his use of a minor in the offense; and (2) he was denied effective assistance of counsel because his counsel failed to object when the government breached the plea agreement by advocating for an offense level different from that in the plea agreement.

In his first Amended Motion [docket entry # 4] Wallace raised the government's breach of the plea agreement (which he sets out as four separate issues, numbered 1, 2, 3 and 5), and he also argued that he was denied his rights under the due process clause when I misadvised him of his appeal rights.

In his Second Amended Motion [docket entry # 7] Wallace added a claim that counsel was ineffective because he failed to correct the court's mistaken belief that the Presentence Report calculation of the total offense level was what the parties had agreed to in the plea agreement.

Finally, in his request to supplement the motion [docket entry # 10] Wallace asks leave to add the argument that his counsel was ineffective for advising him

---

[1] The first document Wallace filed was a letter asking for transcripts and more time, but I directed the Clerk of Court to docket it as a motion to vacate and directed Wallace to file a motion to vacate on the proper form. [See 8/27/08 Order, docket # 2]. The initial letter did not state any grounds for relief, so my reference to the initial motion is to the first document Wallace filed on the proper form [docket entry # 3].

that he qualified as a career offender, when in fact he was not a career offender. He also argues that the later reduction of his sentence when the crack cocaine guidelines were amended was in error because I assumed, again incorrectly, that he was a career offender.

**Background**

Wallace was charged in four counts of a seven-count, four-defendant indictment. Case No. 1:06CR161 CDP. On February 12, 2007, he pleaded guilty to one count of conspiracy to distribute 50 grams or more of cocaine base and two counts of distributing five or more grams of cocaine base. The government agreed to dismiss the remaining count charging distribution of cocaine base.

In the written plea agreement Wallace and the government agreed that he was a career offender under the sentencing guidelines, and that his base offense level should be 37 under § 4B1.1(b)(A).[2] The government agreed that Wallace had accepted responsibility for his criminal conduct and so he should receive a three level reduction under § 3E1.1. They agreed that no other Specific Offense Characteristics of Chapters 2 or 3 applied, and so they recommended that the total offense level was 34. The plea agreement also stated that there was a possibility

---

[2]All guidelines citations are to the United States Sentencing Guidelines effective November 1, 2006, under which Wallace was sentenced.

the government would file a motion for downward departure under § 5K1.1 of the guidelines.

The parties waived their right to appeal the sentence, so long as I followed the recommendations of the plea agreement and sentenced Wallace within the guidelines range resulting from those recommendations. Wallace also waived all rights to file a post-conviction motion "except for grounds for ineffective assistance of counsel at the time of sentencing or prosecutorial misconduct."

When the Presentence Investigation Report (PSR) was prepared, it calculated a total offense level of 35, instead of the 34 recommended by the parties. Because a career offender's criminal history category is always VI, the PSR erroneously calculated the guidelines range to be 292 to 365 months, instead of the 262 to 327 month range that would have resulted from the plea agreement. Wallace's counsel did not object, and at sentencing I stated – and no one corrected me – that the PSR had reached the same conclusion as the recommendations of the plea agreement.[3]

This mistake appears to simply be a mistake in arithmetic, although the PSR's calculations to get there are somewhat complicated. Because they are relevant to this motion, however, I will set out the PSR calculations in some detail.

---

[3]At one point in the sentencing the AUSA stated that the guidelines range was 262 to 327 months – what it should have been under the plea agreement – but I corrected him and told him it was 292 to 365 months – what the PSR said.

As required by the sentencing guidelines, the PSR first calculated what Wallace's offense level would be if he were not a career offender, and then it applied the career offender calculations. Under the drug guidelines in § 2D1.1(c), the PSR found a base offense level of 32 because Wallace was responsible for at least 50 grams but less than 150 grams of crack cocaine. It also recommended two specific offender characteristics from Chapter 3: a four level enhancement under § 3B1.1(a) for being an organizer or leader; and a two level enhancement under § 3B1.4 because Wallace had used a person under 18 years of age in committing the crime. After providing for the three level reduction for acceptance of responsibility, these calculations resulted in a total offense level of 35, without considering the career offender guidelines.

The PSR then concluded that Wallace's total offense level under the career offender guidelines was also 35. This was a mistake. Because the statutory maximum sentence was life, § 4B1.1(b)(A) directed an offense level of 37. When the three levels for acceptance of responsibility are deducted, the total offense level becomes 34. At sentencing, no one involved noticed or pointed out this mistake. The total offense level would still have been 35 had Wallace been a career offender, because § 4B1.1(b) directs the court to use the higher of the career offender and the regular offense level.

Neither party filed any objections to the Presentence Report. The government filed a motion for downward departure under § 5K1.1. At the sentencing hearing on August 28, 2007, I adopted the PSR as my findings of fact and conclusions of law, after verifying with Wallace that he had gone over it with his lawyer and had no objections. Before asking the parties to make their statements, I mistakenly stated that the case was unusual because "the career offender provisions apply, but make absolutely no difference to the sentencing guidelines."

Although Wallace's counsel did not make any formal objections, he pointed out that an argument could be made that one of Wallace's co-defendants was more culpable than he was. The Assistant United States Attorney discussed whether Wallace was more culpable than the co-defendant, and stated that although there was evidence that Wallace was a leader or organizer, there was also evidence that would "support the statement that was made by [Wallace's attorney] that Wallace is no more culpable than" the co-defendant. The AUSA then argued, however, that Wallace "certainly earned" the two-level enhancement for use of a minor in the crime. He went on to detail Wallace's cooperation and the reasons for the § 5K1.1 motion.

I granted the § 5K1.1 motion and sentenced Wallace to 180 months in prison and five years of supervised release. At the conclusion of the hearing I

stated: "You did waive your right to appeal as part of your plea agreement, so I'm not advising you of any appeal rights at this time. If for some reason you think you have a right or reason to appeal, any appeal must be filed within ten days." Wallace did not appeal.

After the sentencing guidelines related to crack cocaine offenses were lowered as a result of Guideline Amendment 706, Wallace asked that counsel be appointed to assist him in filing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). I appointed the same counsel who had represented Wallace earlier in the case. He filed a motion for reduction of sentence, which I granted. Defense counsel, the Probation Office, and the AUSA all agreed that the crack cocaine amendments reduced Wallace's total offense level from 35 to 34, so his guidelines range became 262 to 327 months, and I reduced Wallace's sentence to 161 months, which reflected the same percentage departure I had applied earlier.

## Discussion

**Career Offender Classification**

Wallace should not have been classified as a career offender. Although the question of whether his counsel was ineffective for failing to advise him of this is a close one, I conclude, under all the facts and circumstances and considering the state of the law at the time of the plea and sentence, that counsel was ineffective in

this regard, and that Wallace was prejudiced by the failure.  My explanation follows.

Under § 4B1.1(a), a defendant is properly characterized as a "career offender" if: (1) the defendant was at least 18 years old at the time the offense was committed, (2) the offense was either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense.  A "controlled substance offense" is a felony offense relating to the manufacture, import, export, distribution, or dispensing of a controlled substance, or possession with intent to do one of those things.  § 4B1.2(b).  A simple possession conviction does not qualify: "each of the acts [in § 4B1.2(b)] requires something more than just possession." *United States v. Walterman*, 343 F.3d 938, 940 (8th Cir. 2003).

Wallace in fact had two prior felony convictions for controlled substance offenses.  The first was for distribution of a controlled substance in 1997.  The second was also for distribution of a controlled substance, resulting from a two-count indictment charging possession with intent to distribute a controlled substance and possession of a controlled substance in 2004.  Only the first of these two 2004 convictions meets the definition of a controlled substance offense, because the second was a simple possession case.  Wallace was sentenced to six years of imprisonment on each count, to run concurrently.  The two charges were

related cases that had been sentenced together and were assessed three criminal history points in Wallace's PSR under § 4A1.1(a).

Not all convictions that meet the definitions of crimes of violence or controlled substance offenses, however, count as predicates for career offender classification under § 4B1.1. Section 4B1.2(c) also requires that "the sentences . . . are counted separatelyunder the provisions of § 4A1.1(a), (b), or (c)." Thus, a prior sentence must have received points under one of those subsections in order to trigger the career offender guideline.

The Eighth Circuit recently explained this situation in *King v. United States*, 595 F.3d 844 (8th Cir. 2010), a § 2255 case directly analogous to Wallace's situation. The grouping rules of § 4A1.2(a)(2) provide that certain prior convictions, including those committed on the same day without an intervening arrest, are treated as one sentence for the purpose of assigning criminal history points under § 4A1.1 (a), (b) and (c). "In order to determine which subsection of § 4A1.1 a group of related prior sentences falls under," the court must "use the longest sentence of imprisonment if concurrent sentences were imposed." *King*, 595 F.3d at 849, quoting U.S.S.G. § 4A1.2(a)(2). Thus, the decision whether a group of prior sentences receives 1, 2, or 3 criminal history points is based on the longest of the related sentences. In *King*, the groups of convictions used to invoke the career offender provisions included both resisting arrest and other crimes not

classified as crimes of violence. The second group discussed in *King* is analogous to Wallace's case. King had received concurrent suspended sentences of four years each for one count of possession of a controlled substance and one count of resisting arrest. *King*, 595 F.3d at 849-850. The possession charge did not trigger the career offender rules, because it was not a distribution offense. But the resisting arrest was a crime of violence that would have, had it not been grouped with the other charge, been a predicate for the career offender guideline. The Court noted that "since King received equivalent suspended sentences [for the two offenses] . . . it is unclear which should receive a criminal history point. Either both of them are 'the longest sentence of imprisonment,' § 4A1.2(a)(2), or neither is." *Id*. at 850. King had argued that he could not be classified as a career offender since it could not be determined which of these convictions earned criminal history points. The court found "plausible" King's reading of the guidelines, and held that in this situation the rule of lenity should apply, and so the district court erred in sentencing King as a career offender. *King*, 595 F.3d at 852.

Under the reasoning of *King*, Wallace was improperly classified as a career offender. Wallace's 2004 convictions included one simple possession conviction and one possession with intent to distribute conviction. The two charges were related cases that had been sentenced together and each was given a six year sentence. They were grouped together under the guidelines and the group was

given three criminal history points under § 4A1.1(a). Only the possession with intent to distribute charge would have qualified as a career offender predicate. Wallace was thus in the same position as King where it could be argued that because neither sentence was the "longest," it could not be determined which of the two received the points, so the points could not be attributed to either conviction for career offender considerations. Wallace's counsel, like King's did not raise this argument.

The *King* court did not hold, however, that King's trial counsel was ineffective for failing to raise this issue, nor did it hold that counsel was *not* ineffective. Instead, it stated that it was "reluctant" to find trial counsel ineffective, but it granted King relief on a different basis. The Eighth Circuit remanded for resentencing after concluding that King's *appellate* counsel was ineffective, for two reasons: (1) counsel failed to argue that King's appeal waiver did not apply because the sentencing court had not followed the recommendations of the plea agreement, and (2) counsel failed to raise this guidelines issue on appeal even though King had pointed it out and raised it in a *pro se* filing. The Court therefore remanded the case for resentencing without explicitly determining whether trial counsel was ineffective.

To prove ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), a defendant has the burden of showing that (1) his

attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance. *Strickland*, 466 U.S. at 687. The first part of the test requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice in the second prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In *King* the court stated that it "would be reluctant to conclude that King's attorney was unconstitutionally ineffective for failing to raise his guideline argument at sentencing, for we must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . That we now conclude King's argument prevails does not necessarily mean his attorney was incompetent for failing to pursue it." *Id.* at 853 (internal quotations omitted).

Although I am similarly reluctant to find counsel was ineffective for failing to make what was at the time an obscure and somewhat counterintuitive argument,[4] I conclude that counsel's performance fell below the standard set out in

---

[4]The argument is counterintuitive because it is based on the premise that a defendant should receive a *lower* sentence because he has *more* prior convictions. The normal theory of the sentencing guidelines is that defendants who have a more extensive criminal history will receive a higher sentence than those with fewer prior convictions. Had Wallace only been convicted of

*Strickland.* The rule was not novel. That criminal history points must be assessed for a conviction to qualify for career offender status was discussed in *United States v. Peters*, 215 F.3d 861 (8th Cir. 2000). For firearms cases, the rule was discussed in *United States v. Charles*, 209 F.3d 1088, 1090 (8th Cir. 2000) (two burglary convictions were not "counted separately" and so count as only one prior violent felony) and in *United States v. Ruhaak*, 49 Fed. Appx. 656, 2002 WL 31426447 (8th Cir. Oct. 31, 2002) ("A prior felony conviction is a crime of violence under this provision if it receives criminal history points and is counted separately under U.S.S.G. § 4A1.1(a)-(c)."). Some version of this argument had thus been recognized by the Eighth Circuit at least three times in the seven years before Wallace's sentencing.

Here the incorrect determination that Wallace was a career offender was made at an early stage – during plea negotiations – and was not revisited later, even when, as discussed below, we all committed many other mistakes during the sentencing. There were multiple opportunities for counsel to have discovered the error, but he did not, and I must reluctantly conclude that his ignorance of this technical argument about the guidelines rendered his representation ineffective.

I now turn to the prejudice inquiry, and I conclude that Wallace was prejudiced by his counsel's failure to raise this issue. In *King*, the Eighth Circuit

---

possession with intent to distribute in 2004, he would be a career offender. But because he was *also* convicted at that time of a simple possession felony, he is not a career offender.

found that there was "little doubt" that *Strickland*'s prejudice prong had been met because King would have likely received a much shorter sentence had the argument been presented to the district court. *King*, 595 F.3d at 852-53. Wallace likewise would have received a shorter sentence had the guidelines been applied correctly.

After the crack guidelines amendments, I reduced Wallace's sentence and sentenced him as if he had a total offense level of 34, which is what the plea agreement called for. The government argues that because of that reduction Wallace cannot show prejudice, but I disagree. I initially sentenced Wallace to 180 months, having departed downward pursuant to § 5K1.1 from the guidelines range of 292 to 365 months. This sentence was approximately 38% lower than the bottom of the incorrect guidelines range used at sentencing. When the crack cocaine guidelines were amended, I reduced the sentence to 161 months. Because I had wrongly concluded that the was a career offender, Wallace only received one level off, from the total offense level 35 to a total offense level 34. The reduction to 161 months was again approximately 38% lower than the bottom of the guidelines range resulting from the amended total offense level 34 (262 months). But because Wallace was, in fact, not a career offender, he should have received the full two level reduction provided by the crack amendments, which would have resulted in a total offense level of 33 and a guideline range of 235 to 293 months.

A sentence of 146 months would be approximately the same proportionate departure from the bottom of the guideline that would have resulted had the total offense level been 33.[5]

Thus, it is clear that Wallace would have received a lower sentence had counsel not incorrectly conceded that he was a career offender. He was therefore prejudiced by his counsel's actions. Although this deprivation of Wallace's constitutional rights would be a sufficient basis to grant § 2255 relief, there are other reasons for granting it as well.

**Breach of the Plea Agreement**

Wallace alleges that the government breached the plea agreement when it advocated for two separate sentencing enhancements. I agree that the government advocated for one of the enhancements and so it breached the agreement. Like the other mistakes in the case, I believe that this was inadvertent and that counsel did not believe it mattered, given the career offender issue. Nevertheless, Wallace is entitled to relief on this claim.

The defendant bears the burden of demonstrating the underlying facts that establish breach of a plea agreement by a preponderance of the evidence. *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010) (internal citation omitted).

---

[5]This assumes, of course, that the specific offense characteristics in the PSR had applied, but if the career offender guideline had not been involved, it is not clear that at least the four-level enhancement for being a leader would have applied.

"Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir.2004) (citing *Margalli-Olvera v. INS.*, 43 F.3d 345, 351 (8th Cir.1994)). "Application of these contract principles is tempered by the constitutional implications of a plea agreement." *Margalli-Olvera*, 43 F.3d at 351. "[E]ach party should receive the benefit of its bargain." *United States v. Peglera*, 33 F.3d 412, 413 (4th Cir.1994) (internal citation and quotation omitted).

The plea agreement stated that none of the Specific Offense Characteristics in Chapters Three (other than acceptance of responsibility) applied. The PSR, however, recommended a four level enhancement under § 3B1.1(a) for being an organizer or leader of the criminal activity and a two level enhancement under § 3B1.4 for using a person under the age of 18. At the sentencing hearing, the government advocated for the latter of the two enhancements. Defense counsel had argued that there was evidence showing that one of Wallace's co-defendants was more culpable than him. It is not entirely clear that the statement was made in reference to the leadership role enhancement, but in any event, the government agreed with defense counsel, stating that the government would "support the statement that was made by [Wallace's attorney] that Wallace is no more culpable than Thomas." Wallace claims that I never resolved his objection to the leadership role enhancement, but no actual objection was made, and the government did not

advocate for the four level leadership role enhancement. The government did not breach the agreement with regard to this enhancement.

The AUSA did, however, make statements to support the two level enhancement for using a person under the age of 18. He argued that Wallace had "certainly earned" the enhancement. This was a breach, as it was advocating for application of a specific offense characteristic under Chapter Three, contrary to the plea agreement.

In *United States v. Fowler*, 445 F.3d 1035 (8th Cir. 2006), the Eighth Circuit held that the government had breached a plea agreement where the government advocated for the career offender guidelines when the plea agreement had recommended a total offense level that was not based on the career offender guidelines. Here the argument is that the government breached the agreement by arguing for enhancements to the regular guidelines, when the plea agreed to the career offender guideline. Under *Fowler*, any argument for an offense level higher than agreed to is a breach. *See also United States v. DeWitt*, 366 F.3d 667 (8th Cir. 2004) (government breached plea agreement by arguing for higher drug quantity than agreed to); *United States v. Thompson*, 403 F.3d 1037 (8th Cir. 2005)(government breached plea agreement by arguing for higher base offense level than agreed to). If a court finds that the Government has breached a plea agreement, the appropriate remedy is "specific performance and resentencing by a

different judge or the opportunity to withdraw his plea." *United States v. Yah*, 500 F.3d 698, 704-05 (8th Cir. 2007) (citing *Santobello*, 404 U.S. at 263).

**Misadvising of Appeal Rights**

I compounded the errors by incorrectly telling Wallace that he had waived his right to appeal. My statement was incorrect because the appeal waiver only applied if I followed the recommendations of the plea agreement, which were for a total offense level of 34. Because I used a total offense level of 35, the waiver of appeal did not apply. I did not tell Wallace that he might have waived his rights or that he should discuss it with his lawyer – I told him that he had done so, and that is not correct.

The remedy for failure to advise a criminal defendant of his appeal rights is reinstatement of the right to appeal, *United States v. Drummond*, 903 F.2d 1171, 1172 (8th Cir. 1990), or resentencing, *Johnson v. United States*, 453 F.2d 1314, 1316 (8th Cir. 1972) (per curiam).

**Other Claims of Ineffectiveness**

Wallace also argues that his counsel was ineffective for failing to object to the government's breach of the plea agreement. I agree that this failure constituted ineffective assistance. A reasonable defense counsel, having negotiated a plea agreement that necessarily resulted in a guidelines range of 262 to 327 months, should have noticed that the PSR found the range to be 292 to 365 months.

Counsel's conduct in failing to notice these errors and object to them deprived Wallace of the counsel to which he is entitled under the Sixth Amendment.

**Appointment of Counsel and Remedy**

I will grant Wallace's § 2255 motion and vacate the sentence and conviction, but it is not clear to me where things stand once that is done. I will appoint counsel for Wallace to advise him of the consequences of this ruling and to represent him in the criminal case. I will then direct counsel to notify me whether Wallace wishes to withdraw his plea, wishes to go forward with the plea agreement and be resentenced, or seeks some other remedy.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Wallace's motion supplement [#10] is GRANTED.

2. Wallace's various motions to vacate, set aside, or correct his sentence are GRANTED, and the conviction and sentence in Case No. 1:06CR161 CDP are VACATED.

3. Wallace's motion to appoint counsel [#5] is GRANTED and Andrea Smith, 715 W. Rosehill, Kirkwood MO 63122, telephone (314)822-2735, is appointed to represent Wallace in this case and in Criminal Case No. 1:06CR161CDP.

4. All other pending motions are denied as moot.

A separate judgment in accord with this Memorandum and Order and an order vacating the judgment in the criminal case are also entered today.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of April, 2011.